It is thus clear that two classes of persons are confined in Dannemora State Hospital: First, a class of convicts detained solely as prisoners, the only warrant for whose detention is the original certificate of conviction; and, second, a class of ex-convicts, detained as insane persons, solely under an order of commitment as such, granted by a court or judge at the conclusion of proceedings in lunacy.

[1] In the case under consideration, the convict belongs to the former class. His sentence was life imprisonment. Within the term of that sentence he is confined in one of several of the state institutions devoted to the purpose. His punishment is imprisonment. In the place of his imprisonment he has no choice or say. The state names the place, and it may name for him, when pronounced insane, an insane hospital, as well as it may name for another, when pronounced tubercular, a hospital for tubercular convicts. No court may intervene, and by pronouncing a convict sane or well, against the judgment of the prison management, transfer him to another prison. The placing of a convict, according as he may be classified as sick or well, dangerous or peaceful, sane or insane, is a detail of prison management, with which no court can interfere.

[2] Furthermore, it may be said that this is a case in which no writ should in the first instance have issued. A writ must issue unless it appears from the petition itself that the petitioner is prohibited by law from prosecuting the writ. Code, § 2020. In this instance the petition shows that the relator was duly convicted of the crime of murder in the second degree, and duly sentenced to Sing Sing Prison for the term of life, from which prison he was transferred to Dannemora State Hospital as an insane person. It therefore appeared on the face of the petition that he was detained by virtue of a final judgment of a competent tribunal of criminal jurisdiction, in which case no writ should issue. Code, § 2016.

The writ is therefore dismissed.

Writ dismissed.

---

BARKER v. NEW YORK CENT. & H. R. R. CO. (two cases).

(Supreme Court, Appellate Division, Second Department. November 5, 1915.)

RAILROADS ⊜⟶348—INJURY TO PERSONS CROSSING TRACK—IMPUTED NEGLIGENCE—LIABILITY—WARNINGS—EFFECT.

Where, in an action against a railroad company for death, alleged to have been inflicted through its negligence, it appeared decedents received their fatal injury by being struck by a train while being driven across the track by a third person, to whom timely warnings were given by flagmen on each side of the track and by outcries of other people, plaintiff could not recover, even though such third person's contributory negligence was not imputed to decedents, since, under the evidence of warnings, there was no negligence on the part of defendant.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1138–1150; Dec. Dig. ⊜⟶348.]

Stapleton, J., dissenting.

Appeal from Trial Term, Richmond County.

Separate actions by Lewis W. Barker, as administrator of Mary E. Reynolds, deceased, and as administrator of Gertrude M. Barker, deceased, against the New York Central & Hudson River Railroad Company. From judgments in favor of plaintiff, defendant appeals. Reversed.

Argued before JENKS, P. J., and THOMAS, STAPLETON, MILLS, and RICH, JJ.

Robert A. Kutschback, of New York City, for appellant.
Henry F. Cochrane, of Brooklyn, for respondent.

PER CURIAM. The decedents were not accountable for the conduct of Scully, nor was he amenable to their advice or command. They, unfamiliar with the system of tracks and the related ways and structures, were justified in respecting in a degree his judgment, and if, amidst the warning shouts, they did not, in the few available seconds, interrupt his hasty and unexpected attempt to contest with the train in the matter of crossing, it cannot be decided by the court that they were negligent in doing so. The evidence preponderatingly shows that the collision was caused by Scully's negligent attempt to pass before the train in the face of warnings timely given by the flagman on the easterly side, as well as by the flagman on the westerly side, and by outcries by several other persons, which were given in time to enable him to avoid the train.

The judgment and order in each case should be reversed, and a new trial granted; costs to abide the event.

STAPLETON, J., dissents.